UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | Chapter 7 |
| KYLE CHAPMAN PRICHARD, ) | Case Number 22-50574 |
| ) | |
| Debtor. ) | |
| ) | |
| GERARD R. VETTER, ) | |
| Acting United States Trustee For Region Four, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | AP Number _____ |
| ) | |
| ) | |
| KYLE CHAPMAN PRICHARD, ) | |
| ) | |
| Defendant. ) | |

**COMPLAINT TO DENY DISCHARGE**

Gerard R. Vetter, Acting United States Trustee for Region Four, by counsel, objects to the granting of a discharge to Kyle Chapman Prichard (the "Defendant") and in support thereof states as follows:

*Jurisdiction and Venue*

1. The Defendant commenced this case on December 22, 2022, by filing a petition for relief under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Virginia, Harrisonburg Division. The filing of the petition commenced case number 22-50574 (the "Bankruptcy Case").

2. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

3. The statutory predicates for this complaint are 11 U.S.C. §§ 105 and 727.

1

4. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

***The Parties and General Background***

6. Plaintiff is the Acting United States Trustee for Region Four and consents to the Court's entry of a final order in this matter.[1]

7. The Defendant is the Debtor in the underlying bankruptcy case, case number 22-50574.

8. The Defendant filed schedules, statements and related documents on January 4, 2023.

9. The Defendant signed the declarations under penalty of perjury regarding the petition, schedules, statements and related documents filed on January 4, 2023. As provided in 28 U.S.C. § 1746, the declarations signed by the Defendant had like force and effect of oaths.

10. The petition, schedules, statements, thereto are incorporated by reference.

11. Based on his testimony at a Bankruptcy Rule 2004 examination in this case, the Defendant currently works for a small construction company owned by his father, Arthur Prichard.

12. The Defendant currently lives in Page County, Virginia in the Western District of Virginia.

13. Prior to the filing of his bankruptcy petition the Defendant operated a construction company called Grace Custom Builders, LLC ("Grace Custom Builders").

---

[1] The United States Trustee is a Department of Justice official charged with, among other things, supervising bankruptcy case administration. 28 U.S.C. § 586(a)(3). United States Trustees "serve as bankruptcy watch-dogs to prevent fraud, dishonesty, and overreaching in the bankruptcy arena." H.R. Rep. No. 95-595, at 88 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6049; *In re A-1 Trash Pickup, Inc.*, 802 F.2d 774, 775 (4th Cir. 1986). The United States Trustee is authorized to file a complaint objecting to the Defendant's discharge. 11 U.S.C. § 727(c)(1).

14. At all relevant times, the Defendant was the owner of 51% of the equity of Grace Custom Builders.

15. At all relevant times, the other 49% of the equity of Grace Custom Builders was owned by an individual named Travis Wood.

16. Grace Custom Builders had financial problems beginning in 2021. A material supplier sued Grace Customer Builders and the Defendant personally in late October2021.

17. Grace Custom Builders' financial problems accelerated in early 2022. Additional material suppliers sued Grace Custom Builders and the Defendant personally in February 2022 and March 2022.

18. Grace Custom Builders ceased operations in the fall of 2022.

*The Meeting of Creditors and Continued Meeting of Creditors*

19. The Defendant's chapter 7 trustee conducted his chapter 7 meeting of creditors in the Bankruptcy Case on January 23, 2023.

20. The chapter 7 trustee continued the meeting of creditors to February 14, 2023.

21. The chapter 7 trustee concluded the meeting of creditors on February 14, 2023.

22. At the meeting of creditors on January 23, 2023, the Defendant testified under penalty of perjury, among other things, that:

A. he reviewed his bankruptcy petition, schedules, statement of financial affairs and related documents with his lawyer;

B. he reviewed the information in the bankruptcy petition, schedules, statement of financial affairs and related documents carefully before he signed such documents;

C. he signed his bankruptcy petition, schedules, statement of financial affairs and related documents before they were filed with the Court;

D.  he was familiar with the information contained in his bankruptcy petition, schedules, statement of financial affairs and related documents;

E.  the information in his bankruptcy petition, schedules, statement of financial affairs and related documents was accurate to the best of his knowledge; and

F.  no corrections, changes, or additions needed to be made to his bankruptcy petition, schedules, statement of financial affairs and related documents.

23. At the continued meeting of creditors on February 14, 2023, the Defendant testified under penalty of perjury, among other things, that Grace Custom Builders was his source of income in the two years before he filed for bankruptcy.

24. Subsequently, a creditor questioned the Defendant regarding M.A. Bragg & Son's LLC ("MA Bragg") and the following colloquy[2] took place:

Q.  Can [the Defendant] clarify his interest in the MA Bragg and Sons paving company? Looks like in May of 2022 he transferred that business to a Mr. Arthur Prichard. Which is a paving company. Does he still have any interest or holdings in that company?

A.  No. That was always my father's. I set it up . . . and I then ended up putting it in -- he changed it to the SCC. But the bank account is in his name. I have -- He's a hundred percent owner. Always has been. Every piece of equipment -- anything he has is in his name on that. I have nothing to do with that other than I helped him out in the past year.

---

[2] As of the filing of this complaint, the recordings of the meetings of creditors have not been transcribed by a court reporter. Quotes in this complaint are believed to be accurate, but inconsistencies may appear between the quotes in this motion and any transcripts later prepared as a result of, for example, differences in interpretation of words or how pauses in speaking should be interpreted in the transcription process.

***The United States Trustee's Investigation and MA Bragg***

25. On April 11, 2023, the United States Trustee, by counsel, obtained authority from the Court to conduct Bankruptcy Rule 2004 examinations and to issues subpoenas for documents.

26. The United States Trustee, by counsel, issued subpoenas for financial account records for Grace Custom Builders.

27. The financial account records for Grace Custom Builders revealed significant transfers to and from MA Bragg.

28. MA Bragg is a Virginia LLC formed on June 14, 2021.

29. MA Bragg operated as a paving company that primarily performed residential paving work such as paving driveways.

30. MA Bragg ceased operating in the fall of 2022.

31. The United States Trustee obtained account statements and other documents for MA Bragg's accounts at DuPont Community Credit Union ("DuPont CU") via a Bankruptcy Rule 2004 document subpoena.

32. Based on online records of the Virginia State Corporation Commission, the Defendant signed MA Bragg's articles of organization as the "Organizer."

33. Based on online records of the Virginia State Corporation Commission, the articles of organization that the Defendant signed provided the following information concerning the identity and qualifications of MA Bragg's registered agent:

| | |
|---|---|
| RA Qualification: | General Partner of a General or Limited Partnership that is a Member or Manager of the Limited Liability Company |
| Name: Kyle Prichard | Email Address: braggasphalt@gmail.com |

34. Based on online records of the Virginia State Corporation Commission, the articles of organization listed the Defendant's address as the registered office address of MA Bragg.

5

35. In late May and early June of 2021, Grace Custom Builders acquired a Blaw-Knox paving machine (the "Paver") and a Hamm Compactor (the "Roller"). Both of those pieces of equipment were purchased from James River Equipment Virginia, LLC ("James River") and financed by John Deere Construction & Forestry Company ("John Deere").

36. The Defendant personally was the co-borrower, along with Grace Custom Builders, regarding the purchase and financing of Paver and the Roller. A copy of the Motion for Relief filed by John Deere, which includes the loan contracts and security agreements for the Paver and Roller, are attached as **Exhibit 1**.

37. MA Bragg used the Paver and the Roller.

38. Grace Custom Builders did not use the Paver and the Roller.

39. On June 30, 2023, the United States Trustee issued a subpoena for documents to MA Bragg. A copy of that subpoena is attached as **Exhibit 2**.

40. MA Bragg produced extremely limited information in response to the subpoena.

41. In particular, MA Bragg did not produce an operating agreement, any documents regarding the ownership of the entity, any documents regarding transfers of membership interests in the entity, any documents regarding persons with access to or control of MA Bragg's DuPont CU accounts and any documents showing the source of funds deposited into MA Bragg's DuPont CU accounts.

42. On August 1, 2023, the United States Trustee issued a subpoena for documents to James River. That subpoena sought records of sales or leases of equipment to Defendant, Arthur Prichard, MA Bragg and Grace Customer Builders. A copy of that subpoena is attached as **Exhibit 3**.

43. In response to the subpoena, James River did not produce any documents regarding MA Bragg.

44. In response to the subpoena, James River did produce a contract dated June 7, 2022, for the purchase of a skid steer signed by Arthur Prichard. James River did not produce any other documents regarding Arthur Prichard.

*MA Bragg's DuPont CU Accounts*

45. On April 6, 2022, the Defendant applied to open an account in the name of MA Bragg at DuPont CU.

46. On the application, the Defendant's "TITLE/POSITION" is listed as "OWNER" of MA Bragg and his ownership percentage is disclosed as "100." A copy of the application document is attached as **Exhibit 4**.

47. The Defendant signed **Exhibit 4.**

48. On April 6, 2022, DuPont CU opened two accounts in the name of MA Bragg: A) a savings account – last two digits of account number 00, and; B) a checking account – last two digits of account number 90.

49. The address listed on the MA Bragg DuPont CU account statements was the Defendant's address at the time.

50. All the account statements issued by DuPont CU for the MA Bragg accounts were sent to the Defendant's then current address.

51. After an opportunity for discovery, the United States Trustee expects that the evidence will show that when DuPont CU opened an account for MA Bragg it relied on a printout of information from the Virginia State Corporation Commission listing the Defendant as the registered agent and organizer of MA Bragg.

52. On May 12, 2022, based on online records of the Virginia State Corporation Commission, Arthur Prichard, the Defendant's father, signed documents making himself the registered agent of MA Bragg and changing the principal office address of MA Bragg to his address.

53. MA Bragg's accounts at DuPont CU were active from April 6, 2022 to October 20, 2022 (198 days or approximately six and one-half months).

54. During the approximately six and one-half months that MA Bragg used the accounts at DuPont CU, there were 167 transactions, mostly online banking transfers, between MA Bragg and Grace Custom Builders.

55. On many days the account statements show multiple transfers back and forth between Grace Custom Builders and MA Bragg.

56. Between April 6, 2022, and October 20, 2022, MA Bragg transferred approximately $171,045.00 to Grace Custom Builders and MA Bragg received approximately $128,263.00 from Grace Custom Builders. That is a net transfer of $42,782.00 from MA Bragg to Grace Custom Builders.

57. The net transfers from MA Bragg to Grace Custom Builders represents approximately 13% of the gross deposits into MA Bragg's DuPont CU accounts while the accounts were active.

58. Between April 6, 2022, and October 20, 2022, MA Bragg transferred $10,715.00 directly to Kyle Prichard from the DuPont CU accounts.

59. Between April 6, 2022, and October 20, 2022, MA Bragg transferred approximately $7,065.00 to Travis Wood and MA Bragg received approximately $3,729.00 from Travis Wood. That is a net transfer of $3,336.00 from MA Bragg to Travis Wood.

60. Between April 6, 2022, and October 20, 2022, there were $11,100.00 in cash withdrawals from MA Bragg's DuPont CU accounts.

61. Between April 6, 2022, and October 20, 2022, MA Bragg made payments of at least $16,324.71 to employees of Grace Custom Builders.

62. After an opportunity for discovery, the United States Trustee expects that the evidence will show that MA Bragg directly paid personal expenses of the Defendant and his immediate family from MA Bragg's DuPont CU accounts.

### *The Defendant's Schedules and Statement of Financial Affairs*

63. On Schedule A/B filed on January 4, 2023, the Defendant did not disclose any ownership of MA Bragg in response to question 19.

64. On the Statement of Financial Affairs filed on January 4, 2023, the Defendant did not disclose any transfer of his ownership interests in MA Bragg to his father or anyone else in response to question number 18.

65. On the Statement of Financial Affairs filed on January 4, 2023, the Defendant did not disclose his connections to MA Bragg in response to question number 27.

66. After an opportunity for discovery, the United States Trustee expects the evidence to show that the Defendant did not disclose amounts paid to him by MA Bragg in 2022 on questions number 4 and 5 on the Statement of Financial Affairs filed on January 4, 2023.

67. The Defendant filed an amendment to the Creditor Matrix but has not filed any amended Schedules or an amended Statement of Financial Affairs.

### *Conclusions Regarding the Defendant and MA Bragg*

68. After an opportunity for discovery, the United States Trustee expects the evidence to show that the Defendant either: A) owned all of the membership interests in MA Bragg on the

Petition Date; B) transferred all of the membership interests in MA Bragg to his father within the two years before the petition date (most likely on May 12, 2022), or; C) transferred some of the membership interests in MA Bragg to his father within the two years before the petition date (most likely on May 12, 2022) and retained some of the membership interests in MA Bragg for himself.

69. After an opportunity for discovery, the United States Trustee expects that the evidence will show that some or all the transactions in MA Bragg's DuPont CU accounts were either made by Defendant or at his direction.

70. After an opportunity for discovery, the United States Trustee expects that the evidence will show that funds due to Grace Custom Builders and/or the Defendant were deposited into the MA Bragg accounts at DuPont CU for the purpose of concealing assets of Grace Custom Builders and/or the Defendant from creditors.

71. After an opportunity for discovery, the United States Trustee expects the evidence to show that, regardless of whether or when he legally owned all or some of the membership interests in MA Bragg, the Defendant exercised de facto control over the assets of MA Bragg, particularly the funds in the DuPont CU accounts, and that the Defendant used that control to support Grace Custom Builders, make payments to himself, to pay for his personal expenses or those of his immediate family and to hinder, delay or defraud his creditors and the creditors of Grace Custom Builders.

72. After an opportunity for discovery, the United States Trustee expects that the evidence will show that the Defendant concealed his ownership of, connections with, control over MA Bragg and its assets and his use of funds of MA Bragg.

**First Cause Of Action – 11 U.S.C. § 727(a)(2)**

73. The allegations set forth above are incorporated herein as if repeated in their entirety, particularly paragraphs 8-10, 13-38 and 42-72 (inclusive).

74. Section 727(a) of the Bankruptcy Code states that the court shall grant the debtor a discharge unless:

> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
> (A) property of the debtor, within one year before the date of the filing of the petition; or
> (B) property of the estate, after the date of the filing of the petition;

75. Courts have recognized that intent to defraud may be shown through circumstantial evidence, and the commonly cited badges of fraud are:

> (1) the lack or inadequacy of consideration;
> (2) the family, friendship or close associate relationship between the parties;
> (3) the retention of possession, benefit or use of the property in question;
> (4) the financial condition of the party sought to be charged both before and after the transaction in question;
> (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and
> (6) the general chronology of the events and transactions under inquiry.

Salomon v. Kaiser (In re Kaiser), 722 F.2d 1574, 1582-83 (2d Cir. 1983).

76. "[A] careful reading indicates that intent to hinder or delay, even if not fraudulent, may be sufficient for a denial of discharge." Cullinan Assocs., Inc. v. Clements, 205 B.R. 377, 381 (W.D. Va. 1995) (citing 4 Collier on Bankruptcy P 727.02[3] at 727-14).

77. The Plaintiff objects to the discharge of Defendant pursuant to 11 U.S.C. § 727(a)(2)(A) on the grounds that he concealed property, particularly membership interests in MA Bragg and his control over the assets of that entity, particularly MA Bragg's accounts at DuPont

11

CU, prior to the petition date with the intent to hinder, delay or defraud his creditors or the Chapter 7 Trustee.

78. In addition, by way of example and not in limitation, the following actions evidence Defendant's attempts to conceal his interest in MA Bragg and are evidence of his intent to hinder, delay, or defraud creditors or the chapter 7 trustee in violation of § 727(a)(2)(A):

    A. Providing inaccurate answers to Question 19 on his Schedule A/B.

    B. Providing inaccurate answers to Questions 4, 5, 18 and 27 on his Statement of Financial Affairs

    C. Testifying falsely under oath at the Section 341 meeting held on January 23, 2023, that his schedules and statement of financial affairs were accurate.

    D. Testifying falsely under oath at the continued Section 341 meeting held on February 14, 2023, that Grace Custom Builders was his source of income in the two years before his bankruptcy.

    E. Testifying falsely under oath at the continued Section 341 meeting held on February 14, 2023, regarding MA Bragg. Specifically, that:

        i) MA Bragg as "always his father's."

        ii) the MA Bragg bank account was in his father's name.

        iii) his father had always been the 100% owner of MA Bragg.

        iv) all of MA Bragg's equipment was in his father's name.

        v) the Defendant had "nothing to do with" MA Bragg other than helping out his father in the past year.

79. In the alternative, to the extent that the Defendant actually transferred an interest in MA Bragg to his father, he did so with the intent to hinder, delay, or defraud creditors or the chapter 7 trustee in violation of § 727(a)(2)(A).

80. The discharge of Defendant should be denied under 11 U.S.C. § 727(a)(2).

**Second Cause Of Action – 11 U.S.C. § 727(a)(3)**

81. The allegations set forth above are incorporated herein as if repeated in their entirety, particularly paragraphs 25-34, 39-41, 45-62 and 68-72 (inclusive).

82. A discharge may be denied to a debtor when, "the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case." 11 U.S.C. § 727(a)(3).

83. The Defendant has violated § 727(a)(3) by concealing, destroying, falsifying or failing to keep or preserve books, documents, records, and papers, from which his financial condition or business transactions might be ascertained, including, but not limited to: concealing, destroying, or failing to keep or preserve records of MA Bragg evidencing the ownership of that entity and the transfer of same.

84. The concealment, destruction, mutilation, falsification, or failure to keep or preserve any recorded information, from which the Defendant's financial condition or business transactions might be ascertained is not justified under all the circumstances of this case.

85. The Defendant's discharge should be denied under 11 U.S.C. § 727(a)(3).

**Third Cause of Action – 11 U.S.C. § 727(a)(4)(A)**

86. The allegations set forth above are incorporated herein as if repeated in their entirety, particularly paragraphs 8-10, 13-38 and 42-72 (inclusive).

87. "A false oath is 'material,' and thus sufficient to bar discharge, if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." In re Chalik, 748 F.2d 616, 618 (11th Cir. 1984).

88. Plaintiff objects to the discharge of the Defendant pursuant to 11 U.S.C. § 727(a)(4)(A) on the grounds that the Defendant knowingly and fraudulently made false oaths in and in connection with this case.

89. Under penalty of perjury, Defendant certified multiple times that the statements and schedules filed herein were true and correct when in truth and fact, as the Defendant well knew, the statements and schedules failed to accurately disclose information about his financial affairs, businesses, creditors, and property, including but not limited to:

   A. providing inaccurate answers to Question 19 on his Schedule A/B; and

   B. providing inaccurate answers to Questions 4, 5, 18 and 27 on his Statement of Financial Affairs.

90. At his meeting of creditors on January 23, 2023, Defendant gave material testimony under oath that he knew was false, including, but not limited to the testimony identified in paragraphs 22(E) and 22(F).

91. At his continued meeting of creditors on February 14, 2023, Defendant gave material testimony under oath that he knew was false, including, but not limited to:

14

    A.    that Grace Custom Builders was his source of income in the two years before his bankruptcy.

    B.    regarding MA Bragg that:

        i) MA Bragg was "always his father's."

        ii) the MA Bragg bank account was in his father's name.

        iii) his father had always been the 100% owner of MA Bragg.

        iv) all of MA Bragg's equipment was in his father's name.

        v) the Defendant had "nothing to do with" MA Bragg other than helping out his father in the past year.

92.    The Defendant's discharge should be denied under 11 U.S.C. § 727(a)(4)(A).

93.    The United States Trustee reserves the right to alter, amend, or supplement this complaint as more information becomes available.

WHEREFORE, Plaintiff prays that the discharge of the Defendant from his debts be denied and that Plaintiff be granted such other and further relief as is just.

Dated: August 30, 2023

                                        GERARD R. VETTER

                                        Acting United States
                                        Trustee for Region Four
                                         /s/ B. Webb King
                                        Trial Attorney for the United States Trustee.

B. Webb King (VSB #47044)
210 First Street, S.W., Suite 505
Roanoke, Virginia 24011
Telephone: (540) 857-2838
Webb.King@usdoj.gov